ORIGINAL

EILEEN M. DECKER
United States Attorney
ROBERT F. CONTE
Assistant United States Attorney
Acting Chief, Tax Division
United States Attorney's Office
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6607
Facsimile: (213) 894-0115
E-mail: Robert.Conte@usdoj.gov
TINO M. LISELLA
Assistant Chief (FL Bar No. 44510)
TIMOTHY M. RUSSO
Trial Attorney (NY Bar No. 4461703)
Tax Division, Western Criminal Enforcement Section
United States Department of Justice
601 D Street NW
Washington, DC 20004
Telephone: (202) 514-5085
Facsimile: (202) 514-9623
E-mail: tino.m.lisella@usdoj.gov
timothy.m.russo@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED

2016 AUG -1 AM 11:16

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MASUD SARSHAR,<br><br>Defendant. | No. CR- CR 16 00527<br><br><u>PLEA AGREEMENT FOR DEFENDANT MASUD SARSHAR</u> |

1. This plea agreement is subject to approval of the United States Department of Justice, Tax Division. This constitutes the plea agreement between MASUD SARSHAR ("defendant") and the United States Attorney's Office for the Central District of California and the United States Department of Justice, Tax Division (together, "the USAO") in the above-captioned case. This agreement is limited to the

USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

RULE 11(c)(1)(C) AGREEMENT

2. Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 29 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 31 and 32 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

DEFENDANT'S OBLIGATIONS

3. Defendant agrees to:

a. Give up the right to indictment by a grand jury, and at the earliest opportunity requested by the USAO and provided by the Court, to appear and plead guilty to a two-count Information charging a violation of 18 U.S.C. § 371 and a violation of 26 U.S.C. § 7212(a)

in the form attached to this agreement or a substantially similar form.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

4. Defendant further agrees to cooperate fully with the USAO, the Internal Revenue Service, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b. Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c. Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

DEFENDANT'S OTHER OBLIGATIONS

5. Defendant also agrees:

a. To make restitution at or before the time of sentencing, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding. Pursuant to 18 U.S.C. § 3663(a)(3), the parties agree that the amount of restitution owed to the IRS is as follows:

| **Tax Year** | **Tax Due and Owing** |
|---|---|
| 2006 | $423,090 |
| 2007 | $3,200,313 |
| 2008 | $1,053,260 |
| 2009 | $3,299,545 |
| 2011 | $5,519 |
| 2012 | $392,507 |
| Total | $8,374,234 |

b. Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for tax years 2006, 2007, 2008, 2009, 2011 and 2012.

c. Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue

Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

d. That if requested by the IRS, Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea agreement, permitting the Internal Revenue Service to assess and collect his tax liabilities for tax years 2006 through 2009, 2011, and 2012, as well as assess and collect the civil fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law.

e. To repatriate any funds or assets held in any foreign country or outside the United States.

f. That nothing in this agreement shall preclude or bar the IRS from the assessment and/or collection of any additional tax liability, including interest and penalties, determined to be due and owing from defendant by the IRS for 2006, 2007, 2008, 2009, 2011 and 2012.

g. That, in order to resolve defendant's civil liability for failing to report all foreign financial accounts on Reports of Foreign Bank and Financial Accounts, TD F 90-22.1 (now FinCEN Forms 114), and other foreign information reporting obligations under the United States law, for tax years 2009 through 2012, defendant will pay a fifty percent penalty with respect to the funds held in his undeclared foreign financial accounts for the one year with the highest aggregate balance in all of the accounts for calendar years 2009 through 2012, and agrees to pay this sum to the United States

Treasury, through the United States Department of Justice, Tax Division.

THE USAO'S OBLIGATIONS

6. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the court that it impose sentence in accordance with paragraph 24 of this agreement.

c. Not to further criminally prosecute defendant for any additional violations known to the USAO at the time of the plea, arising out of the information provided by the defendant, and defendant's conduct (i) described in the Information or (ii) described in the statement of facts provided in Attachment A. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

7. The USAO further agrees:

a. Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or

argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b. Not to use Cooperation Information, including the information disclosed in Paragraphs 15 and 22 of the Statement of Facts, against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

8. Defendant understands the following:

a. Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement,

obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b. Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

NATURE OF THE OFFENSES

9. Defendant understands that for defendant to be guilty of the crime charged in count one of the Information, that is, a conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371, the following must be true:

a. From in or about 1993 to in or about January 2012, defendant and others known and unknown, including Banker 1 from Bank Leumi and Banker 2 from Bank A, knowingly did combine, conspire, confederate and agree together to defraud the United States;

b. Defendant knew the purpose of the agreement;

c. With knowledge of the purpose of the agreement, Defendant deliberately joined; and

d. During the existence or life of the agreement, Defendant knowingly performed one of the overt acts charged in the Information and did so in order to further or advance the purpose of the agreement.

10. Defendant understands that for defendant to be guilty of the crime charged in count two of the Information, that is, corruptly obstructing and impeding, and endeavoring to obstruct and impede the due administration of the Internal Revenue Laws, in violation of

Title 26, United States Code, Section 7212(a), the following must be true:

a. Defendant corruptly;

b. Endeavored to;

c. Obstruct or impede the due administration of the Internal Revenue Laws.

11. Defendant admits that defendant is, in fact, guilty of the offenses as described in count one and count two of the Information.

PENALTIES AND RESTITUTION

12. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7212(a), is: three years' imprisonment; a one-year period of supervised release; a fine of not more than $250,000; and a mandatory special assessment of $100.

14. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: eight years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200. Defendant agrees to pay the special assessment at or before the time of sentencing.

15. Defendant understands and agrees that the Court: (a) may order defendant to, pay any additional fines that defendant owes to the United States; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

16. Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above. The parties agree that defendant will pay restitution of $8,374,234 to the IRS for tax years 2006 through 2012, as set forth in paragraph 5a.

17. The parties further agree that the tax loss determined for criminal purposes is not binding for civil purposes and is exclusive of civil penalties and interest.

18. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

19. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

20. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

21. Defendant and the USAO agree and stipulate to the statement of facts provided in Attachment A which is attached hereto and incorporated by reference herein. The statement of facts includes

facts sufficient to support a plea of guilty to the charges described in this plea agreement. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct. The parties stipulate that the conduct of defendant referred to in Attachment A hereto violated 18 U.S.C. § 317 and 26 U.S.C. § 7212(a) as charged in Count One and Count Two of the Information.

AGREED-UPON SENTENCE

22. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 24 | U.S.S.G. §§ 2T1.1 and 2T4.1(j) |
| Specific Offense Characteristics: | | |
| Sophisticated Means | 2 | U.S.S.G. § 2T1.1(b)(2) |
| Acceptance of Responsibility: | -3 | U.S.S.G. §§ 3E1.1 and 3E1.1(b) |
| Total Offense Level: | 23 | |

23. Defendant and USAO agree that assuming defendant's cooperation continues through sentencing, the USAO will file a motion pursuant to U.S.S.G. § 5K1.1, requesting a 6 level departure from defendant's Total Offense Level of 23, to Total Offense Level 17.

24. Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), the relevant sentencing guideline factors set forth above, and defendant's cooperation pursuant to §5K1.1 of the Sentencing Guidelines, an appropriate disposition of this case is that the Court impose a sentence of: 24 months' imprisonment (the low end of level 17); 3 years' supervised release with conditions to be fixed by the Court; $200 special

assessment; and $8,374,234 restitution to the IRS. The parties agree that restitution is to be paid prior to sentencing, or if unable to do so, defendant will enter into a payment plan with the IRS. The parties also agree that no prior imprisonment (other than credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

## WAIVER OF CONSTITUTIONAL RIGHTS

25. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel - and if necessary have the court appoint counsel - at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel - and if necessary have the court appoint counsel - at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

26. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

27. Defendant agrees that, provided the Court imposes the sentence specified in paragraph 24 above, defendant gives up the right to appeal any portion of that sentence.

28. The USAO agrees that, provided the Court imposes the sentence specified in paragraph 24 above, the USAO gives up its right to appeal any portion of that sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

29. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any

investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and a prosecutor, knowingly violates or fails to perform any of defendant's obligations

under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b. The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c. The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d. In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

32. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## NO ADDITIONAL AGREEMENTS

33. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

ROBERT F. CONTE
Assistant United States Attorney
Acting Chief, Tax Division

8/1/16
Date

UNITED STATES DEPARTMENT OF JUSTICE
TAX DIVISION

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney
General

TINO M. LISELLA
Assistant Chief
TIMOTHY M. RUSSO
Trial Attorney

8/1/2016
Date

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

| | |
|---|---|
| MASUD SARSHAR<br>Defendant | 7-30-16<br>Date |



14211626 1

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MASUD SARSHAR's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

EDWARD M. ROBBINS, JR.
Attorney for Defendant MASUD SARSHAR

7/30/2017
Date



14211626 1

ATTACHMENT A

STATEMENT OF FACTS

1. MASUD SARSHAR ("SARSHAR") was born in Iran and was an Iranian citizen. SARSHAR emigrated to the United States in 1978 and became a U.S. citizen in the early 2000s. In the early 1990s, he opened Apparel Limited, Inc. ("Apparel Limited"), a California corporation that designed, manufactured, and sold clothing and other apparel.

2. On or about May 10, 1993, SARSHAR opened an account with Israeli Bank A's Balfour branch. Israeli Bank A had branches worldwide, including in the United States. SARSHAR opened the account using his California state driver's license. Israeli Bank A assigned Relationship Manager 1 ("RM1") to manage SARSHAR's account. RM1 was based in Israel, and between approximately 1993 and 2009, RM1 frequently traveled to the United States to meet with SARSHAR in California.

3. On or about November 29, 2007, SARSHAR opened three separate accounts at Bank Leumi Le-Israel B.M. ("Bank Leumi") using his United States passport. Bank Leumi also had branches worldwide, including in the United States. Bank Leumi assigned Relationship Manager 2 ("RM2") to manage SARSHAR's accounts. RM2 was also based in Israel but frequently traveled to the United States to meet with SARSHAR in California.

4. Despite working for separate banks, RM1 and RM2

occasionally met together with SARSHAR. During his meetings with RM1 and RM2, they provided SARSHAR with details regarding his account balances and other banking products offered by their respective banks.

5. SARSHAR intended that his foreign bank accounts be kept secret and believed that RM1 understood his wishes. For example, RM1 suggested that SARSHAR open the Israeli Bank A account using a code name and recommended that SARSHAR not receive account statements by mail in the United States. To that end, SARSHAR elected to pay a fee to Israeli Bank A for its "hold mail" service and Israeli Bank A did not send SARSHAR account documents by mail. Instead, RM1 brought hard copies of SARSHAR's Israeli Bank A account statements during his visits to the United States and he did not leave copies of those statements with SARSHAR. To further maintain the secrecy of his account, SARSHAR's meetings with RM1 usually occurred in SARSHAR's car.

6. Similarly, SARSHAR believed that RM2 knew of his desire to keep his Bank Leumi accounts secret and RM2 acted accordingly. SARSHAR's Bank Leumi accounts were held by entities that he created, rather than in his own name. RM2 brought electronic copies of SARSHAR's Bank Leumi account statements during her visits to the United States, which she kept hidden on a USB drive contained in a necklace that she wore. In addition,

SARSHAR discussed the secrecy of his Bank Leumi accounts with RM2 and when news broke regarding government enforcement related to United States taxpayers who hid money in offshore accounts, RM2 assured SARSHAR that his accounts would remain secret and secure and that the Bank Leumi would never do anything to "screw" him. Years after SARSHAR closed his Bank Leumi accounts in 2011, he spoke with RM2 by phone and again voiced his concerns about his Bank Leumi accounts being revealed to government authorities. RM2 responded by saying "Masud who?," indicating to SARSHAR that RM2 would claim ignorance regarding SARSHAR's existence if asked about his Bank Leumi accounts.

7. At no time did Defendant SARSHAR report the existence of his foreign bank accounts at Israeli Bank A or Bank Leumi to the United States. In fact, in 2006, 2007, 2009, 2010, and 2011, SARSHAR filed false Forms TD F 90-22.1 (FBAR), reporting only his accounts in Mexico.

8. SARSHAR received significant business income deposits into his Israeli Bank A account on the dates and in the amounts listed below:

| Deposit Date | Deposit Amount |
|---|---|
| September 11, 2006 | $206,469 |
| October 23, 2006 | $396,205 |
| November 24, 2006 | $308,632 |

| | |
|---|---|
| January 16, 2007 | $138,422.04 |
| February 23, 2007 | $235,490.06 |
| February 23, 2007 | $396,887.24 |
| March 28, 2007 | $177,833.72 |
| March 28, 2007 | $189,234.15 |
| July 19, 2007 | $687,118.88 |
| December 11, 2007 | $879,449 |
| December 17, 2007 | $832,900 |
| December 20, 2007 | $963,000 |
| December 21, 2007 | $962,118 |
| December 24, 2007 | $969,303 |
| December 27, 2007 | $710,477 |
| August 21, 2009 | $954,351 |
| August 28, 2009 | $873,991 |
| Total: | $9,881,881.09 |

SARSHAR failed to include these amounts on either the tax returns for Apparel Limited or on his individual income tax returns for the corresponding tax years.

9. SARSHAR also received interest income on the deposits in his Israeli Bank A account in the years and in the amounts listed below:

| Calendar Year | Interest Amount |
|---|---|
| 2007 | $513,003.80 |

| | |
|---|---|
| 2008 | $355,668.90 |
| 2009 | $468,315 |
| 2010 | $225,290.70 |
| 2011 | $66,584.90 |
| 2012 | $5,753.80 |
| Total: | $1,634,617.10 |

SARSHAR omitted these amounts from his total income when he filed personal income taxes for the corresponding tax years.

10. SARSHAR also received significant business income deposits into his Bank Leumi accounts on the dates and in the amounts listed below:

| Deposit Date | Deposit Amount |
|---|---|
| December 6, 2007 | $1,835,091.14 |
| October 10, 2008 | $955,351 |
| October 15, 2008 | $967,111 |
| October 15, 2008 | $905,371 |
| July 15, 2009 | $950,480.40 |
| July 21, 2009 | $999,451 |
| August 12, 2009 | $377,617.91 |
| August 26, 2009 | $964,122 |
| September 14, 2009 | $919,071.40 |
| October 27, 2009 | $895,551.40 |

| | |
|---|---|
| November 4, 2009 | $896,531.40 |
| November 9, 2009 | $852,431.40 |
| Total: | $11,518,181.05 |

SARSHAR failed to include these amounts on either the tax returns for Apparel Limited or on his individual income tax returns for the corresponding tax years.

11. SARSHAR also received interest income on the deposits in his Bank Leumi account in the years and in the amounts listed below:

| Calendar Year | Interest Amount |
|---|---|
| 2007 | $12,996.55 |
| 2008 | $366,270.12 |
| 2009 | $158,192.03 |
| 2010 | $206,462.35 |
| 2011 | $173,513.24 |
| Total: | $917,434.29 |

SARSHAR omitted this interest income when he filed personal income taxes for the corresponding tax years.

12. SARSHAR also received interest income from Israeli Bank B in the amount of $4,608.28, for calendar year 2012, which he did not report to the IRS.

13. A back-to-back loan was a mechanism by which a foreign

accountholder received a "loan" in the United States, which was collateralized by his undeclared account. This allowed an owner of an undeclared account to enjoy the economic benefits of the funds in his undeclared account without directly repatriating the funds or creating a paper trail that could potentially disclose the existence of the undeclared account to U.S. authorities.

14. SARSHAR used back-to-back loans from Israeli Bank A and Bank Leumi and guarantees from Israeli Bank A to indirectly repatriate money that SARSHAR held in his Israeli Bank A and Bank Leumi accounts without declaring those accounts to the United States government.

15. First, in the 1990's SARSHAR obtained a $1,000,000 back-to-back loan from Israeli Bank A through its branch in Los Angeles, which is now closed. RM1 offered SARSHAR this banking product as a way of accessing his offshore funds without declaring the existence of the Israeli Bank A account to the United States government, and RM1 facilitated the processing of the loan. SARSHAR received the loan, which he secured with funds held in his Israeli Bank A account. SARSHAR never repaid the back-to-back loan.

16. In addition, on or about August 5, 2008, SARSHAR obtained a back-to-back loan from Bank Leumi USA in the amount of $10 million, which was collateralized by SARSHAR's undeclared

accounts at Bank Leumi. RM2 facilitated the processing of this back-to-back loan.

17. On or about February 6, 2009, Executive 1 at Israeli Bank A approved a guarantee to Bank Leumi in the amount of $10 million at the request of defendant SARSHAR. The guarantee issued by Israeli Bank A was fully collateralized by defendant SARSHAR's undeclared account at Israeli Bank A.

18. On or about August 4, 2009, SARSHAR renewed his $10 million back-to-back loan with Bank Leumi USA, which was still collateralized by his undeclared accounts at Bank Leumi. In addition, SARSHAR obtained an additional $9 million back-to-back loan with Bank Leumi USA, which was also collateralized by his undeclared accounts at Bank Leumi.

19. On or about January 25, 2010, in an effort to prevent Defendant SARSHAR from moving funds from Israeli Bank A to Bank Leumi, Executive 1 approved an increase to the guarantee that Israeli Bank A previously issued to Bank Leumi from $10 million to $14.8 million, which was fully collateralized by defendant SARSHAR's undeclared account at Israeli Bank A.

20. In or around early 2010, RM1 and RM2 advised SARSHAR, in order to conceal his undeclared accounts from the United States, to obtain Iranian and Israeli passports to avoid being "flagged" as an American by their respective banks' compliance departments for reporting purposes. Accordingly, on or about

December 15, 2010, SARSHAR acquired an Iranian passport. Then, on or about May 2, 2011, SARSHAR acquired an Israeli passport. When SARSHAR presented these passports to RM1 and RM2, they told him that it was too late, as he had already been identified as a United States citizen by their respective banks.

21. Still wishing to avoid disclosure of his Israeli Bank A and Bank Leumi accounts to the United States government, at the direction of RM1 and RM2 and with the assistance of RM1, on or about December 5, 2011, SARSHAR transferred the remaining funds from his undeclared account at Israeli Bank A to an undeclared account that he created at Israeli Bank B.

22. Finally, on or about June 10, 2011, SARSHAR wired the remaining $5.8 million from his Bank Leumi account to an account held by Individual 1 or by a company controlled by Individual 1 at Hong Kong Bank A. Individual 1 then wired those funds to an account controlled by SARSHAR in the United States to make the funds appear as a loan to Apparel Limited from Individual 1's company.

************************************

I have read this Attachment A to the Plea Agreement and carefully discussed every part of this Attachment to the Plea Agreement with my attorney. I agree and stipulate to the facts as stated above.

MASUD SARSHAR

7-30-16
DATE

I am MASUD SARSHAR'S attorney. I have read Attachment A to the Plea Agreement and carefully discussed every part of this Attachment to the Plea Agreement with my client. To my knowledge, my client's decision to agree to the facts as stated above is an informed and voluntary one.

EDWARD M. ROBBINS, JR.
Attorney for Defendant
MASUD SARSHAR

7/30/2016
DATE